IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**CHRISTOPHER VALENCIA**,

    Plaintiff,

v.                              No. CV 1:17-00509 RB/SCY

**THE BOARD OF REGENTS, University of New Mexico**, **ROBERT FRANK**, in his individual capacity, **CHAOUKI ABDALLAH**, in his individual capacity, **CAROL PARKER**, in her individual capacity, **MARK PECENY**, in his individual capacity, **LES FIELD**, in his individual capacity, **RONDA BRULOTTE**, **ERIN DEBENPORT**, **LINDSAY SMITH**, **FRANCIE CORDOVA**, in her individual capacity, **LAURA LYNN BUCHS**, in her individual capacity, **HEATHER COWAN**, in her individual capacity, **AARON JIM**, in his individual capacity, **ALEXANDRA TACEA**, **KAYLA AHMED**, **DANIELLE KABELLA**, **JOE SCEARCE**, **LAURA MORRIS**, **JULIA FULGHUM**, in her individual capacity, **ALBERT SENA**, **DENNIS OLGUIN**, and **SARAH LEISTER**,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Once again the Court examines whether Plaintiff Christopher Valencia's complaint is clear enough for the case to proceed. The last time it examined Valencia's complaint in detail, the Court sent the complaint back for lack of clarity and concision. Many months and a few amended complaints later, Valencia has successfully stitched together a coherent narrative. However, it is still unclear who, exactly, is being sued for what. So yet again, the Court dismisses Valencia's complaint without prejudice, this time with specific directions on how to amend. Valencia has three business days to file an amended complaint as instructed.

## BACKGROUND[1]

**Valencia's start at UNM and the beginning of trouble**

Valencia was hired as a tenure-track assistant professor in the Department of Anthropology by the Board of Regents of the University of New Mexico (UNM) in 2012. (Doc. 76 ¶¶ 30–31.) For about three years, Valencia performed his duties without incident, even receiving a letter from Defendant Chaouki Abdallah, the Provost of the university, in June 2015, encouraging him "to maintain [his] current good trajectory toward tenure . . . ." (*Id.* ¶ 35.)

But just days later, Defendant Les Field told Valencia that students from the anthropology department had filed a complaint against him with the Office of Equal Opportunity (OEO). (*Id.* ¶ 37.) Despite Valencia's attempts to find out more, Field would not elaborate on the substance of the complaints. (*Id.* ¶¶ 37–38.) Valencia heard no more about the OEO complaint until Field emailed him about two months later. (*See id.* ¶¶ 40, 42.) In his email, Field told Valencia that Defendants Mark Peceny and Julia Fulghum had requested Valencia's recusal from grading comprehensive exams for the 2015–2016 year because of the ongoing OEO investigation. (*Id.* ¶ 40, 42.) Field told Valencia that his recusal from grading was an "action . . . that is disciplinary in nature without any formalized, written, or official reason for doing so." (*Id.* ¶ 44.) Valencia complained to the University's Compliance Office, protesting that removing him from grading "constituted an adverse action taken without proper notification and in the absence of any opportunity to contest the decision." (*Id.* ¶ 47.)

In response to Valencia's complaint, the Senior Vice Provost, Defendant Carol Parker, investigated and determined that Field, Peceny, and Fulghum had recused Valencia from grading

---

[1] For the purposes of this motion, the Court adopts the facts alleged in Valencia's Third Amended Complaint (Doc. 76) as true and views the allegations in the light most favorable to Valencia. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).

in an attempt to strike a balance between Valencia's and students' concerns in light of the complaints to the OEO. (*Id.* ¶ 48.) Such a recusal, Parker found, was a "temporary suspension" allowable under UNM policy. (*Id.*) On the strength of Parker's findings, Valencia remained suspended from grading in spite of his protests that he was unable to defend himself against unknown complaints and that no UNM policy justified his "temporary suspension." (*Id.* ¶¶ 48, 50–52.)

It was only in September 2015 that Valencia first learned about the substance of the complaints against him. (*See id.* ¶ 56.) First, the OEO, acting through Defendant Laura Lynn Buchs, told Valencia that Defendant Danielle Kabella, one of his students, had accused him of sexual orientation discrimination. (*Id.*) Then the OEO notified Valencia that Defendant Kayla Ahmed, a former UNM graduate student, had accused him of sexual harassment and gender discrimination. (*Id.* ¶ 61–62.) Ultimately, the OEO determined that both complaints were not supported by probable cause. (*Id.* ¶¶ 60, 65.)

By this time, Valencia suspected that three female professors, Defendants Ronda Brulotte, Erin Debenport, and Lindsay Smith had been engaging in a smear campaign against him. (*See id.* ¶ 69.) He noticed that those who had lodged complaints against him were students mentored by Brulotte, Debenport, or Smith. (*Id.* ¶ 68.) He repeatedly told Field that other faculty had informed him about the three professors' attacks against him and that the three professors had made false allegations against him and coached student complaints. (*See id.* ¶¶ 70, 73, 79.)

Field told Valencia that he forwarded Valencia's concerns to the OEO office, but there is no evidence that the OEO did anything in response. (*See id.* ¶¶ 77, 82–83.) Brulotte, Debenport, and Smith's attacks continued unabated. (*See id.* ¶ 86.) For example, Brulotte told students that Valencia was under investigation for "sexual predation." (*Id.* ¶ 84.) And in the presence of

students at a local restaurant, Brulotte and Debenport high-fived each other as they proclaimed that they were "going to take Valencia down." (*Id.* ¶ 128.) As a result, students dropped Valencia as their advisor and Valencia was removed from academic committees. (*See id.* ¶ 86.) When later asked why nothing was being done, Field told Valencia that he had been instructed "to not address Valencia's request for relief from the hostile work environment." (*See id.* ¶ 88.)

**Investigation into anthropology department and original disciplinary action**

After repeated complaints from Valencia, the OEO finally launched a "departmental investigation" into discrimination and sexual harassment in the anthropology department. (*See id.* ¶¶ 89–91.) During the investigation, the OEO threw university policies by the wayside. The OEO did not give Valencia an opportunity to respond to adverse claims, or even provide notice of what those claims were, despite policy requiring notice and an opportunity to respond. (*See id.* ¶¶ 94–95, 98.) The OEO did not allow Valencia to identify favorable witnesses, in spite of policy requiring the OEO to do so. (*Id.* ¶ 100.) Those students who did reach out or submit statements on Valencia's behalf, the OEO chose not to interview. (*Id.* ¶¶ 107, 114.) And despite policy that limited the OEO to investigating claims brought within 90 or 180 days of the alleged conduct absent a finding of good cause, the OEO mainly investigated 12-month-old claims without identifying good cause for investigating the stale claims. (*Id.* ¶¶ 96–97, 108.)

Apart from the OEO's conduct, the atmosphere surrounding the investigation was troubling. Students complained that they were under pressure to support the accusers against Valencia, and that those who refused were called "anti-feminist," dismissed as not understanding the seriousness of the claims against Valencia, or accused of victim blaming. (*Id.* ¶¶ 115–16, 118, 123.) Brulotte, Smith, and Debenport invited students for meetings to discuss "the situation in the department." (*Id.* ¶ 121.) In those meetings, the three professors shared confidential

information about their interactions with the OEO, the anthropology department administration, and the pending investigations. (*Id.*) Brulotte also posted on Facebook in a manner viewable by some students, making clear her opposition to Valencia and claiming that anyone who did not support her views "was not a feminist." (*See id.* ¶ 129.) As a result, students who did not believe the allegations against Valencia hesitated to come forward for fear of social backlash or retaliation from Brulotte, Smith, or Debenport. (*See id.* ¶¶ 117, 122.)

After nine months, the OEO released its findings in March 2016. (*Id.* ¶¶ 103, 133.) The OEO found that the overwhelming majority of allegations against Valencia lacked corroboration, but found probable cause to believe that Valencia had engaged in discriminatory conduct based on sexual orientation and gender identity, and that Valencia subjected students to a sexually harassing hostile academic environment. (*Id.* ¶¶ 104–05.) After the OEO's findings were released, Peceny sent Valencia a notice of emergency suspension, from which Valencia learned that he was suspended immediately and indefinitely "[d]ue to the risk of imminent harm to students stemming from [his] behavior . . . ." (*Id.* ¶ 131–32.)

Valencia appealed the OEO's findings to the Office of the President and the Academic Freedom & Tenure Committee (AFTC). (*Id.* ¶¶ 134–35.) Frank denied Valencia's request for a discretionary appeal without any substantive review, in contravention of UNM policy. (*See id.* ¶¶ 136–37.) But the AFTC found that the anthropology department may have committed procedural error by relying on the emergency suspension provision, which was only meant for a "short term condition" as a stopgap measure to forestall imminent harm. (*Id.* ¶¶ 138, 140.) Although Valencia protested the length of the emergency suspension to Peceny and Field, neither individual responded to Valencia's concern, and the emergency suspension kept Valencia from the workplace for two-and-a-half months. (*Id.* ¶¶ 142–43.)

Eventually, Field issued Valencia a letter of censure, and Valencia was allowed to return to his normal duties. (*Id.* ¶¶ 149–50.) Valencia appealed the letter of censure after receiving assurances from the university that appealing did not carry the risk of additional punishment. (*See id.* ¶ 152.)

**Media fury, reopening of investigation, and termination of employment**

As the letter of censure was on appeal, "a media firestorm broke out over UNM's decision to return Valencia to his teaching duties." (*Id.* ¶ 153.) Brulotte, Smith, and Debenport had "met with local television stations and print media" to share their views about Valencia's situation. (*See id.* ¶ 154.)

Valencia filed a complaint under UNM's Respectful Campus policy, noting that Brulotte, Smith, and Debenport had allowed their attorneys to disclose confidential information to the media, that the OEO had done nothing to protect him, and that he was now the target of derogatory and threatening emails. (*Id.* ¶ 163.) Neither the university, the OEO, nor the anthropology department addressed Valencia's concerns. (*Id.* ¶ 165.)

Instead, the university reopened its investigation into Valencia and made a broad solicitation for "any students who had any information related to Valencia participating in the sexual harassment of students." (*Id.* ¶¶ 156, 158.) Shortly afterwards, Valencia was again placed on emergency suspension based on new information the university received. (*Id.* ¶ 160.) Apparently Defendant Albert Sena, a UNM maintenance employee, had accused Valencia of being involved in a drunken assault and battery in Spring 2015. (*Id.* ¶ 166.) And Defendant Laura Morris, a former student of Valencia's, had accused Valencia of discriminating against her because of her race and engaging in inappropriate conduct. (*Id.* ¶¶ 169–71.)

Valencia filed yet another complaint with the OEO, again reiterating that Brulotte, Smith, and Debenport had been engaging in an unchecked media campaign against him and noting that his previous complaints to the anthropology department had been fruitless. (*Id.* ¶¶ 174, 176.) Brulotte had even posted a photograph of Valencia on Facebook with the caption "I am a sexual predator." (*Id.* ¶ 175.)

In August 2016, Peceny, who was handling Valencia's letter of censure appeal, decided to terminate Valencia's employment for cause. (*Id.* ¶¶ 177, 179.) Valencia appealed Peceny's decision to Abdallah, but Abdallah upheld Peceny's decision. (*Id.* ¶ 183.) Then the OEO, in a decision signed by Defendants Aaron Jim and Francie Cordova, found no probable cause to support Valencia's claims against Brulotte, Smith, and Debenport. (*Id.* ¶ 185.) Valencia attempted to appeal his discharge to the AFTC, but the AFTC would not hear his appeal. (*Id.* ¶ 187.)

**Valencia's lawsuit and the present motion to dismiss**

Valencia then filed this lawsuit. The defendants have asked the Court to dismiss Valencia's complaint or at least send it back for more editing. (Doc. 78 at 4, 8.) The problem with the complaint, the defendants contend, is that it does not comply with Rule 8 of the Federal Rules of Civil Procedure. (Doc. 78 at 4.)

## DISCUSSION

Rule 8 of the Federal Rules of Civil Procedure requires plaintiffs to "state their claims intelligibly so as to inform the defendants of the legal claims being asserted." *Mann v. Boatright*, 477 F.3d 1140, 1148 (10th Cir. 2007). A lengthy complaint bloated with irrelevant allegations could so obfuscate a plaintiff's claims as to violate Rule 8. *See U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003). If a complaint violates Rule 8, a court may

dismiss the complaint. *See id.* But complaints do not need to be perfect, and a court should overlook flaws when it can and "get on with the case." *Id.*

The defendants argue that the length of Valencia's complaint (386 numbered paragraphs in 51 pages), amount of time required to answer the complaint, and lack of clarity about who is being charged in each count require dismissal pursuant to Rule 8. (Doc. 78 at 5–8.) The Court rejects the defendants' time and length objections. The time it will take for defendants' attorneys to respond to the complaint is not the product of unnecessary length in the complaint, but rather the length of time covered in the complaint, as well as the number of defendants (22) and claims (20) involved. Valencia has cut much of the unnecessary prose from his previous complaint, and—considering that many of the numbered paragraphs consist of a single sentence and that Valencia is attempting to tell a years-long story involving 22 defendants—the Court finds that the complaint is not so unnecessarily lengthy as to render it unclear. Indeed, the complaint was clear enough for the Court to summarize Valencia's allegations earlier in this Opinion. Instead of being nightmarishly exhausting, as the defendants argue, the complaint tells an exhaustingly nightmarish story of a person struggling helplessly for years under a cloud of innuendo and allegations.

However, the complaint is still unclear as to who is being sued for what. In paragraph 208 of the complaint, Valencia discusses "the governmental entity named herein and the individually-named institutional Defendants . . . to wit, Defendants Frank, Abdallah, Parker, Peceny, Field, Cordova, Buchs, Cowan, Jim, and Fulghum." (Doc. 76 ¶ 208.) Since Valencia later says that "Defendants identified in paragraph 208" and "UNM and the individually-named Defendants set forth in paragraph 208" refer to the same defendants, (Doc. 79 at 4), UNM must be the "governmental entity named herein" and the "individually-named institutional

Defendants" must mean Frank Abdallah, Parker, Peceny, Field, Cordova, Buchs, Cowan, Jim, and Fulghum. Despite the fact that Valencia says there are "11 individually-named institutional Defendants" when there are only 10 by the Court's count, (*id.* at 6), the Court guesses that Valencia probably made a typographical error and proceeds to decrypt the complaint with its working theory.

Count 1 alleges misconduct by *UNM and* the individually-named institutional defendants, but appears to seek relief only from "the individually-named Defendants set forth in paragraph 208." (Doc. 76 ¶¶ 210, 212.) This apparent discrepancy—where Valencia alleges improper behavior by UNM but excludes UNM when discussing relief—is pervasive in the complaint. (*See, e.g.*, *id.* ¶¶ 245–46.) When the defendants highlight this discrepancy as confusing, (Doc. 78 at 7), Valencia responds that the defendants' argument is "without legal sense" because "the individually-named Defendants were separated from UNM for the obvious reason that Valencia" cannot recover punitive damages from UNM. (Doc. 79 at 4–5.) But the defendants may have some legal sense after all, because even accepting Valencia's explanation as true, the question remains: did Valencia exclude UNM entirely from the count, or did Valencia include UNM in the count, but only refrain from seeking punitive damages against it?

And Valencia says the "11 individually-named Defendants not included in paragraph 208 are liability actors in" counts 7 and 12–14. (*Id.* at 6.) Taking the list of defendants on the cover page and striking the defendants identified in paragraph 208, the Court identifies the "11 individually-named Defendants not included in paragraph 208" as Brulotte, Debenport, Smith, Tacea, Ahmed, Kabella, Scearce, Morris, Sena, Olguin, and Leister. A reasonable conclusion, then, is that all of those defendants would be charged in counts 7 and 12–14. But count 14 only mentions Brulotte, Debenport, Tacea, and Leister, apparently contradicting Valencia's

representation that the "11 individually-named Defendants not included in paragraph 208 are liability actors in" count 14.

There are other confusing aspects of how Valencia identifies the defendants for his legal claims, but the Court will not highlight them here. The Court's intention is to get on with the case, not to nitpick, but it and the defendants should not have to guess who is being charged in each count. As written, the complaint gives the Court little confidence that it knows who is being sued for what.

## CONCLUSION

The Court will grant in part the defendants' motion and dismiss Valencia's complaint **without prejudice**. The "Factual Allegations" portion of the complaint sufficiently pleads the nub of Valencia's story, but Valencia must clarify who is being sued in each count. The Court **directs Valencia to add an <u>underlined sentence at the end of each count</u> that names, specifically, each defendant who is charged in that count.** This underlined sentence will be deemed comprehensive as to each count and will take precedence over any contradictory or inconsistent language in Valencia's complaint. **Valencia has three business days from the filing of this Memorandum Opinion and Order to file an amended complaint as instructed**.

_____
**ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE**