**FILED**
**United States Court of Appeals**
**Tenth Circuit**

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

**April 19, 2021**

_____

**Christopher M. Wolpert**
**Clerk of Court**

CHRISTOPHER VALENCIA,

     Plaintiff - Appellant,

v.

THE BOARD OF REGENTS, University
of New Mexico; ROBERT FRANK, in his
individual capacity; CHAOUKI
ABDALLAH, in his individual capacity;
CAROL PARKER, in her individual
capacity; MARK PECENY, in his
individual capacity; LES FIELD, in his
individual capacity; RONDA BRULOTTE;
ERIN DEBENPORT; LINDSAY SMITH;
FRANCIE CORDOVA, in her individual
capacity; LAURA LYNN BUCHS, in her
individual capacity; HEATHER COWAN,
in her individual capacity; AARON JIM, in
his individual capacity; ALEXANDRA
TACEA; KAYLA AHMED; DANIELLE
KABELLA; JOE SCEARCE; LAURA
MORRIS; JULIA FULGHUM, in her
individual capacity; ALBERT SENA;
DENNIS OLGUIN; SARAH LEISTER,

     Defendants - Appellees.

No. 20-2079
(D.C. No. 1:17-CV-00509-RB-SCY)
(D. N.M.)

_____

## ORDER AND JUDGMENT[*]

_____

_____

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Before **MATHESON**, **KELLY**, and **EID**, Circuit Judges.

———————————————————

Students accused Christopher Valencia (also known as Cristobal Valencia), an untenured assistant professor in the University of New Mexico's anthropology department, of harassment and discrimination based on sex, gender, and sexual orientation. After an investigation revealed several instances of misconduct corroborated by numerous witnesses, the university terminated him for cause.

Mr. Valencia sued the Board of Regents of the University of New Mexico ("UNM") and 21 individuals associated with the university (collectively, "Appellees") in federal district court. In his complaint, he alleged 20 counts under federal and state law. He sought only damages. The district court dismissed or granted summary judgment for the Appellees on all his federal claims. It declined to exercise supplemental jurisdiction over his state law claims.

On appeal, Mr. Valencia contests the district court's dismissal of his substantive due process claim and grants of summary judgment on his procedural due process, Title VII gender and national origin discrimination, and Title VII retaliation claims. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.   BACKGROUND

### A.   *Factual Background*

#### 1.  Key Defendants

Of the 21 individuals sued ("Individual Appellees"), the following played significant roles in Mr. Valencia's termination:

2

- Robert Frank was UNM's president.

- Chaouki Abdallah was UNM's provost.  Shortly after Mr. Valencia was terminated, Provost Abdallah succeeded Mr. Frank as UNM's president.

- Mark Peceny was Dean of UNM's College of Arts and Sciences.

- Les Field was the chair of UNM's anthropology department.

- Laura Buchs was a compliance specialist with UNM's Office of Equal Opportunity ("OEO") and helped investigate Mr. Valencia.

2. **Mr. Valencia's Early Years at UNM**

Starting in 2011 or 2012, UNM employed Mr. Valencia based on successive one-year teaching contracts.  For the first few years, Mr. Valencia performed his duties without incident.

3. **June 2015 - Complaints Filed Against Mr. Valencia**

In June 2015, two or three graduate students[1] filed complaints with the OEO against Mr. Valencia for harassment and discrimination.  The OEO investigated these complaints.

In light of more than one individual complaint, the OEO decided to open a separate "departmental investigation."  App. at 435.  It was broader than the OEO's investigation of the individual complaints.  The OEO investigated discrimination based on sex, gender, and sexual orientation in the anthropology department as a whole.

---

[1] In his opening brief, Mr. Valencia represented that two graduate students filed complaints against him.  Aplt. Br. at 13.  But the record suggests that three students did so.  App. at 435.  At oral argument, the parties made conflicting statements as to whether there were two or three student complainants.  *Compare* Oral Arg. at 1:15-2:30, 16:55-17:03, *with id.* at 31:25-30.  This discrepancy is immaterial to our resolution of this appeal.

Also in June 2015, Mr. Field, the anthropology department chair, told Mr. Valencia that students had filed OEO complaints against him.  The OEO formally notified Mr. Valencia about these complaints in or around September 2015.  Despite having been given the opportunity to do so, Mr. Valencia declined to meet with the OEO in person and instead elected to correspond with the OEO by email and campus mail.

4.  **Mr. Valencia Files Complaints with the OEO**

Sometime after students filed OEO complaints against Mr. Valencia, he filed his own OEO complaints.  He alleged that individuals in the anthropology department had subjected him to harassment and discrimination.  The OEO separately investigated these allegations.[2]

5.  **October 2015 - Ms. Buchs Questions Mr. Valencia**

In October 2015, OEO compliance specialist Buchs provided Mr. Valencia a written list of questions about some of the allegations against him.  Ms. Buchs told Mr. Valencia he could respond to the questions in person.  Mr. Valencia provided written responses to at least some of the questions.

6.  **March 2016 - OEO Report**

In March 2016, the OEO issued a report.  It addressed the OEO's departmental investigation but not the investigations into the individual complaints against Mr. Valencia or Mr. Valencia's complaints.

---

[2] The parties have not explained how many complaints Mr. Valencia filed, what precisely he alleged, and what was the outcome.  The record indicates that the OEO found at least two of Mr. Valencia's complaints to lack merit.

The OEO report followed an extensive investigation.  In addition to posing questions to Mr. Valencia, the OEO had interviewed 32 witnesses.  The report concluded that some of the allegations against Mr. Valencia were "corroborated" or "partially corroborated."  The report stated as follows:

> 1.  Valencia made comments of a sexual nature about graduate students, some of whom were also his advisees, in the Anthropology Department to multiple witnesses on multiple occasions.
>
> 2.  Valencia rubbed a female graduate student on her bare skin on the side of her rib cage under her breasts while they were alone in his kitchen.
>
> 3.  Valencia invited three female students, who had been consuming alcohol and were feminine-presenting, to spend the night at his home.
>
> 4.  Valencia touched another female graduate student on her arms, side, stomach and back, while consuming alcohol in a bar, and then suggested she should go home with him rather than with her roommate.
>
> 5.  Valencia showed favored treatment towards feminine presenting female graduate students.  Evidence also shows that feminine presenting students were sexually harassed.
>
> 6.  Female students who Valencia perceived to be lesbian or were less feminine presenting were treated less favorably.

App. at 437.

The OEO report concluded by finding "1.  PROBABLE CAUSE Valencia engaged in discriminatory conduct based on sexual orientation, gender expression and gender identity in violation of [UNM policy]; and 2.  PROBABLE CAUSE Valencia subjected students to sexual harassment that created a hostile environment in violation of [UNM policy]."  *Id.* at 442.

In separate documents, the OEO found that two of the individual complaints

against Mr. Valencia lacked probable cause.  In other words, although the OEO found

probable cause after the departmental investigation, the OEO did not find probable cause

after its investigations of two of the individual complaints.  These different outcomes

reflected that the OEO did not consider the evidence against Mr. Valencia sufficient to

find he had discriminated against or harassed the individual complainants.  But the OEO

did consider the evidence against Mr. Valencia sufficient to find he had generally

discriminated against and harassed students in the anthropology department.

7.  **March 30, 2016 - Dean Peceny Suspends Mr. Valencia on an Emergency Basis**

On March 30, 2016, Dean Peceny sent Mr. Valencia a letter attaching the OEO

report and notifying him he was "suspended with pay from all academic duties associated

with [his] faculty appointment" "[i]n view of the extremely serious nature of the OEO

findings."  App. at 254, 611.  The letter ordered Mr. Valencia to avoid contact with

faculty or students in the anthropology department.  The letter apprised Mr. Valencia that

he "ha[d] the right to request a discretionary appeal of OEO's determination to the

[UNM] President within two weeks of [his] receipt of the attached OEO determination."

*Id.* at 254, 611.

8.  **April 2016 - Mr. Valencia Seeks Discretionary Review of the OEO Report from
    UNM's President**

In April 2016, Mr. Valencia sought discretionary review of the OEO report by

UNM's president, Robert Frank.  Mr. Valencia argued the OEO had failed to follow

proper procedures, the OEO report was not supported by evidence, and the OEO had

violated university policy.  On April 28, 2016, President Frank denied Mr. Valencia's

request for a discretionary appeal.

9.  **June 2016 - Mr. Field Censures Mr. Valencia and Dean Peceny Lifts Mr.
    Valencia's Suspension**

In June 2016, Mr. Field issued a letter censuring Mr. Valencia in light of the

findings in the OEO report.  Also in June, Dean Peceny lifted Mr. Valencia's suspension.

10. **August 8, 2016 - Mr. Valencia Is Accused of a Drunken Assault and Suspended
    Again**

On August 8, 2016, UNM received another complaint about Mr. Valencia.  The

complaint alleged that in spring 2015, Mr. Valencia had drunkenly accosted two UNM

employees and assaulted one of them.  On August 9, 2016, Provost Abdallah again

placed Mr. Valencia on emergency suspension based on these allegations.

11. **August 24, 2016 - Dean Peceny Recommends Mr. Valencia's Termination**

Under UNM policy, Dean Peceny reviewed Mr. Field's decision to censure Mr.

Valencia.  On August 24, 2016, he sent a letter to Mr. Valencia.  The letter said that

censuring Mr. Valencia was insufficient and recommended Mr. Valencia's termination

for cause.

Dean Peceny's letter said that in making this recommendation, he had considered:

(1) the OEO report; (2) a letter and exhibits sent to him by Mr. Valencia's attorney; (3) a

meeting between Dean Peceny, Mr. Valencia, Mr. Valencia's attorney, and an attorney

from UNM's Office of the University Counsel; (4) Mr. Valencia's responses to written

questions Dean Peceny sent after that meeting; (5) a meeting between Dean Peceny and

Mr. Field; (6) a briefing Dean Peceny received from UNM's Office of the University

Counsel about the evidence underlying the OEO report; and (7) meetings with and written communications from witnesses interviewed by OEO.  Dean Peceny noted he had also been briefed about "new allegations of misconduct that have emerged in the past few weeks"—presumably a reference to the August 8 assault complaint.  App. at 287, 433.  He advised Mr. Valencia that his recommendation would be forwarded to Provost Abdallah, the ultimate decisionmaker.

12. **October 2016 - Provost Abdallah Decides Mr. Valencia Should Be Terminated**

Provost Abdallah reviewed Dean Peceny's recommendation that Mr. Valencia be terminated.  In October 2016, Provost Abdallah sent a letter to Mr. Valencia stating his decision to terminate Mr. Valencia.

The letter said Provost Abdallah had considered:  (1) Dean Peceny's recommendation; (2) a September 2016 meeting between Provost Abdallah, Mr. Valencia, and Mr. Valencia's attorney; (3) documents provided by Mr. Valencia and his attorney; (4) the OEO report; and (5) other OEO documents.  Provost Abdallah notified Mr. Valencia that he may "appeal [Provost Abdallah's] decision to the University's Academic Freedom & Tenure Committee through a written complaint."  App. at 450.

13. **Mr. Valencia's Post-Termination Actions**

After his termination, Mr. Valencia appealed to UNM's Academic Freedom and Tenure Committee.  In December 2016, the committee sent a letter to Mr. Valencia declining to proceed with his appeal.

Mr. Valencia appealed that rejection to UNM's president.  By that time, Provost Abdallah had succeeded President Frank as UNM's acting president.  Because "the

termination decision was made by then-Provost . . . Abdallah, it was not possible for President Abdallah to review the appeal." App. at 452. Paul B. Roth, UNM's Chancellor for Health Sciences and Dean of the UNM School of Medicine, reviewed Mr. Valencia's appeal in President Abdallah's place.

In March 2017, Chancellor Roth issued a letter to Mr. Valencia concluding that there was not "a sufficient basis to support an appeal to the President." *Id.* Chancellor Roth notified Mr. Valencia that he could appeal his decision to the UNM Board of Regents. Mr. Valencia did not appeal to the Board.

## B. *Procedural History*

Mr. Valencia filed suit in May 2017. The operative fourth amended complaint alleged 20 counts. Only five are relevant here:

- Count 3 – 42 U.S.C. § 1983 claim for violation of Fourteenth Amendment procedural due process against UNM and 10 of the Individual Appellees.[3]

- Count 6 – 42 U.S.C. § 1983 claim for violation of Fourteenth Amendment substantive due process against UNM and the same 10 Individual Appellees.

- Count 15 – national origin discrimination in violation of Title VII of the Civil Rights Act of 1964 against UNM.

- Count 17 – gender discrimination in violation of Title VII against UNM.

- Count 19 – retaliation in violation of Title VII against UNM.

---

[3] They were President Frank, Provost Abdallah, Senior Vice Provost Carol Parker, Dean Peceny, Mr. Field (department chair), Francie Cordova (OEO director), Ms. Buchs (OEO compliance specialist), Heather Cowan (OEO Title IX coordinator), Aaron Jim (OEO compliance specialist), and Julia Fulghum (special assistant for graduate education). App. at 131-33; *see id.* at 352 n.1.

The Appellees moved to dismiss.  The district court dismissed Counts 3 and 6, the 42 U.S.C. § 1983 claims, against UNM because it had Eleventh Amendment immunity. The court also dismissed Count 6, the substantive due process claim, as to all the Appellees for failure to state a claim, concluding Mr. Valencia had not alleged conduct that "shocked the conscience."  App. at 386-87.

The Appellees then moved for summary judgment.  The district court granted the motion as to Counts 3, 15, 17, and 19 as follows:

- Count 3 – procedural due process claim.  The court held Mr. Valencia was given adequate pretermination process.

- Counts 15 and 17 – Title VII gender and national origin discrimination claims. The court held Mr. Valencia had not shown a prima facie case because he had not identified any evidence supporting an inference of discrimination.  It also found UNM had stated a legitimate, non-discriminatory reason for terminating Mr. Valencia, and Mr. Valencia had not shown that UNM's reasons for terminating him were pretextual.

- Count 19 – Title VII retaliation claim.  The court held Mr. Valencia's OEO complaints were protected activities and that his suspensions and termination were adverse employment actions.  But the court held Mr. Valencia had not shown a prima facie case because he had not identified any evidence of causal relationships between his protected activities and UNM's adverse employment actions.  The court did not address pretext.

Having disposed of Mr. Valencia's federal claims, the court declined to exercise supplemental jurisdiction over his remaining state claims and entered final judgment. Mr. Valencia timely appealed.

## C. *Standards of Review*

### 1. **Dismissal Under Rule 12(b)(6)**

"We review de novo a district court's decision to grant a motion to dismiss for failure to state a claim.  We accept all well-pleaded factual allegations in the complaint as true, and we view them in the light most favorable to the nonmoving party." *Sinclair Wyo. Refin. Co. v. A&B Builders, Ltd.*, 989 F.3d 747, 765 (10th Cir. 2021) (citation, quotations, and alterations omitted).  A complaint must allege facts sufficient "to state a plausible claim for relief on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### 2. **Summary Judgment Under Rule 56**

"We review the grant of summary judgment by the district court de novo, applying the same legal standard to the evidence in the record as did the district court.  In doing so, we view the evidence and draw reasonable inferences in the light most favorable to the nonmoving party." *Sinclair Wyo. Refin. Co.*, 989 F.3d at 765 (citation, quotations, and alteration omitted).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "[T]he mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to create a genuine issue or dispute of material fact.  To create a genuine issue, the nonmovant must present facts

11

upon which a reasonable jury could find in favor of the nonmovant." *Sinclair Wyo.*

*Refin. Co.*, 989 F.3d at 765 (citation and quotations omitted).

## II. **DISCUSSION**

We address the district court's rulings in turn.

### A. *Count 6 - Substantive Due Process Claim*

The district court dismissed Mr. Valencia's substantive due process claim for

failure to state a claim because Mr. Valencia did not adequately allege conscience-

shocking conduct.  On appeal, Mr. Valencia fails to explain why the district court erred.

He advances only a misguided argument that conflates substantive due process with

procedural due process.  Because Mr. Valencia presents no basis to reverse the district

court, we affirm.

### 1.  **Legal Background**

When a state entity deprives an individual of a constitutionally protected property

interest, *see Ribeau v. Katt*, 681 F.3d 1190, 1194 (10th Cir. 2012), the deprivation may

give rise to a Fourteenth Amendment substantive due process claim, *Browder v. City of*

*Albuquerque*, 787 F.3d 1076, 1078 (10th Cir. 2015).  We recognize two types of

substantive due process claims.  First, when a plaintiff challenges legislative action, the

issue is whether the law infringed a "fundamental right."  *Doe v. Woodard*, 912 F.3d

1278, 1300 (10th Cir. 2019) (quotations omitted).  Second, where, as here, a plaintiff

seeks relief for an alleged "tortious executive action," the issue is whether the executive

action "deprived a person of life, liberty, or property" and was "so arbitrary it shocks the

judicial conscience."  *Id.* (quotations omitted).  Ordinary negligence does not shock the

judicial conscience; even reckless conduct "do[es] not necessarily shock the conscience."
*Id.*

2. **Analysis**

On appeal, Mr. Valencia does not challenge the district court's conclusion that Mr. Valencia failed to allege executive action that rises to the level of "shock[ing] the judicial conscience." *Woodard*, 912 F.3d at 1300.  Instead, he recharacterizes his substantive due process claim as a "constitutional property interest claim[]."  Aplt. Br. at 8; *see id.* at 24-25; Aplt. Reply Br. at 12-13.  He then argues the district court erred by applying the "conscience-shocking" standard and should instead have asked whether he was afforded sufficient procedures for his termination.  Aplt. Br. at 24-25 ("Notice of the charges and some form of hearing is required before an individual is finally deprived of a property interest. . . .  Courts also must consider the fairness and reliability of predetermination procedures and the probable value of additional safeguards.").  In short, Mr. Valencia contends the district court should have resolved his substantive due process claim under a procedural due process analysis.

Mr. Valencia offers no reason, let alone applicable authority, to proceed in this manner, especially when he separately pled a procedural due process claim.  We therefore affirm the district court's dismissal of Mr. Valencia's substantive due process claim.

B. *Count 3 - Procedural Due Process Claim*

The district court granted summary judgment to the ten Individual Appellees on Mr. Valencia's procedural due process claim.[4]  The court determined that Mr. Valencia was given adequate notice and an adequate opportunity to respond before he was terminated.

Mr. Valencia has waived most of the arguments he wishes to present on appeal because he forfeited them in district court and fails to argue plain error on appeal.  We affirm because the undisputed material evidence shows Mr. Valencia was given adequate pretermination process.

1.  **Legal Standards - Procedural Due Process for Public Employees**

"To assess whether an individual was denied procedural due process, courts must engage in a two-step inquiry:  (1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process."  *Riggins v. Goodman*, 572 F.3d 1101, 1108 (10th Cir. 2009) (quotations omitted).

Public employees are entitled to certain procedures before they can be terminated. "An essential principle of due process is that a deprivation of life, liberty or property be preceded by notice and opportunity for hearing appropriate to the nature of the case."

---

[4] As noted, the district court dismissed this claim against UNM based on Eleventh Amendment immunity.

14

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quotations omitted).

We have said:

> Because the root requirement of the Due Process Clause is
> that an individual be given an opportunity for a hearing
> before he is deprived of any significant property interest,
> there must be some kind of a hearing prior to the discharge of
> an employee who has a constitutionally protected property
> interest in his employment.  Such a hearing requires:  (1) oral
> or written notice to the employee of the charges against him;
> (2) an explanation of the employer's evidence; and (3) an
> opportunity for the employee to present his side of the story.
> *But a full evidentiary hearing is not required prior to an*
> *adverse employment action; it suffices that the employee is*
> *given notice and an opportunity to respond.*

*Merrifield v. Bd. of Cnty. Cmm'rs for Cnty. of Santa Fe*, 654 F.3d 1073, 1077-78 (10th

Cir. 2011) (emphasis added) (citations, quotations, and alterations omitted).

"We have upheld as sufficient to meet these requirements informal proceedings,

such as pretermination warnings and an opportunity for a face-to-face meeting with

supervisors, and even a limited conversation between an employee and his supervisor

immediately prior to the employee's termination." *Riggins*, 572 F.3d at 1108 (citations

omitted).  We have called such procedures "not very stringent."  *West v. Grand Cnty*, 967

F.2d 362, 368 (10th Cir. 1992).

Our case law imposes more stringent procedural requirements for post-termination

hearings.  *See Loudermill*, 470 U.S. at 546-47; *McClure v. Indep. Sch. Dist. No. 16*, 228

F.3d 1205, 1211-12 (10th Cir. 2000).  And when a terminated public employee is not

afforded a sufficiently robust post-termination hearing, the pretermination hearing must

meet the heightened procedural due process requirements that apply to post-termination hearings. *McClure*, 228 F.3d at 1211.

2. **Analysis**

We (a) explain why Mr. Valencia received adequate pretermination procedures, (b) reject Mr. Valencia's non-waived arguments to the contrary, and (c) briefly describe the arguments Mr. Valencia forfeited in district court and waived on appeal by failing to argue plain error.

a. *Adequate pretermination procedures*

The district court held that the only property interest relevant to Mr. Valencia's procedural due process claim was his interest in the remaining term of his teaching contract. *See* App. at 778. The parties do not contest this holding. The key question is whether Mr. Valencia was afforded adequate pretermination process. He was.

First, Mr. Valencia received repeated "notice . . . of the charges against him." *Merrifield*, 654 F.3d at 1078 (quotations omitted). Mr. Field told him about the individual complaints in June 2015. The OEO gave him formal notice about the individual complaints in or around September 2015. The March 2016 OEO report described the individual complaints and departmental investigation in detail. Mr. Valencia had the opportunity to ask the OEO, Dean Peceny, and Provost Abdallah questions about the charges against him.[5]

_____

[5] Also, in August 2016, when UNM received a complaint alleging a drunken assault by Mr. Valencia, UNM promptly notified Mr. Valencia about the allegations.

Second, Mr. Valencia was given "an explanation of the employer's evidence." *Merrifield*, 654 F.3d at 1078 (quotations omitted).  The OEO report described the evidence, mostly witness testimony, in detail.

Third, Mr. Valencia had "an opportunity . . . to present his side of the story." *Id.* (quotations omitted).  He argued to President Frank why he believed the OEO report was flawed.  He and his attorney met with Dean Peceny and presented a letter and exhibits to him.  Based on that meeting, Dean Peceny sent Mr. Valencia additional questions, and Mr. Valencia responded.  Mr. Valencia and his attorney also met with and provided documents to Provost Abdallah.

As noted, "[w]e have upheld as sufficient to meet [procedural due process] requirements informal proceedings, such as pretermination warnings and an opportunity for a face-to-face meeting with supervisors, and even a limited conversation between an employee and his supervisor immediately prior to the employee's termination." *Riggins*, 572 F.3d at 1108 (citations omitted).  By any measure, UNM afforded to Mr. Valencia pretermination procedures that satisfied these constitutional minima.

We therefore affirm the district court's grant of summary judgment on Mr. Valencia's procedural due process claim.

b.  *Mr. Valencia's non-waived arguments*

Mr. Valencia's non-waived arguments to the contrary are unpersuasive.

First, Mr. Valencia argues he did not have an adequate opportunity to respond or object to the OEO report.  He asserts that when OEO compliance specialist Buchs provided him written questions, the questions did not cover all the allegations of

misconduct.  But, as discussed above, Mr. Valencia was afforded several opportunities to
respond to all the allegations.

Second, Mr. Valencia contends his opportunities to respond to the OEO report
were inadequate because Dean Peceny and Provost Abdallah "did nothing more than
accept the findings and conclusions of the OEO Report at face value."  Aplt. Br. at 12;
*see id.* at 11, 16, 21-22 (similar arguments).  But the record shows otherwise.  The
portions of the record Mr. Valencia cites, Aplt. Br. at 12, 16 (citing App. at 683, 691,
702), show only that (1) Dean Peceny never conducted an OEO investigation himself,
App. at 683; (2) Provost Abdallah did not conduct his own investigation into Mr.
Valencia's misconduct, did not consider himself "an investigative body," and relied on
materials prepared by others, *id.* at 691; and (3) President Frank rejected Mr. Valencia's
request for a discretionary appeal of the OEO report, *id.* at 702.  Nothing in our case law
requires each decisionmaker to conduct a de novo investigation.  And the evidence shows
Dean Peceny and Provost Abdallah gave Mr. Valencia a meaningful opportunity to
respond to the OEO report.

Third, Mr. Valencia argues he was not given adequate notice because Dean
Peceny's recommendation to terminate him was based at least in part on (1) the August
2016 assault allegations and (2) "allegations in a February [2016] document authored by
three faculty members that informed the recommended termination."  Aplt. Br. at 24
(citing App. at 685-86, 694).  Mr. Valencia points to no evidence showing that the
August 2016 assault allegations motivated Dean Peceny's recommendation.  The record
indicates only that Dean Peceny was "briefed on [these] allegations."  App. at 433, 685.

In any case, Provost Abdallah, not Dean Peceny, ultimately decided to terminate Mr.

Valencia.  Further, Mr. Valencia has not shown that the February 2016 document ever

existed or that Dean Peceny relied upon such a document to recommend termination.  Mr.

Valencia's only evidence is a paragraph from his declaration:[6]

> I learned during discovery that Peceny and Abdallah relied
> upon a document with respect to my termination that was
> authored by three female faculty members and presented to
> the OEO, Peceny, and Julia Fulghum.  This document
> included numerous false, defamatory, and slanderous sexual
> improprieties that I had allegedly engaged in.  I had never
> seen that document during the entire period of my UNM
> employment and was never afforded any opportunity to
> respond to its allegations.

App. at 677.  This statement is speculative and cannot create a genuine issue of material

fact.  *See Pioneer Ctrs. Holding Co. Emp. Stock Ownership Plan & Tr. v. Alerus Fin.,*

*N.A.*, 858 F.3d 1324, 1334 (10th Cir. 2017) ("To defeat a motion for summary judgment,

evidence, including testimony, must be based on more than mere speculation, conjecture,

or surmise." (quotations omitted)).

    c.  *Mr. Valencia's waived arguments*

Mr. Valencia presents arguments on appeal that he did not raise in his two pages

of briefing in opposition to summary judgment on the procedural due process claim in

district court.  App. at 647-48.  These include:

---

[6] Mr. Valencia cited this paragraph in district court, App. at 648 (citing App. at 677), but did not cite it on appeal, Aplt. Br. at 24 (citing App. at 694, which does not address the February 2016 document).

- He was entitled to more robust pretermination procedures because UNM did not give him adequate post-termination procedures.  Aplt. Br. at 19; Aplt. Reply Br. at 5-6.[7]

- He should have had a pretermination opportunity to review the evidence underlying the OEO report, not just its description of the evidence.  Aplt. Br. at 12-13, 22-23.

- He should have had a pretermination opportunity to know adverse witnesses' identities, attend witness interviews, and examine and cross-examine witnesses in a tribunal-like setting.  *Id.* at 22-23.

- He did not have a chance to develop his case because his emergency suspensions barred him from contacting potential witnesses.  *Id.* at 12, 21.

- He did not receive adequate notice because he received notice of only the individual complaints against him, and not the departmental complaint.  *Id.* at 13.

- Procedural irregularities in the OEO's investigation and his termination showed a violation of his procedural due process rights.  *Id.* at 17-18, 19-20.

- His post-termination opportunity to appeal to UNM's Academic Freedom & Tenure Committee was meaningless.  *Id.* at 10, 11, 16.

A party forfeits an argument by failing to raise it in district court.  *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1128 (10th Cir. 2011).  On appeal, we will entertain forfeited arguments, but only if the party shows the district court committed plain error. *Id*.  We deem a party's failure to argue plain error as waiver.  *Id.* at 1130-31.  Mr. Valencia forfeited these arguments in district court and waived them here by failing to argue plain error.

*       *       *       *

---

[7] Although the district court recognized the interplay between pretermination and post-termination procedures, it did not specifically rule upon, and Mr. Valencia did not ask it to address, whether he received adequate pretermination procedures in light of the post-termination procedures afforded to him.  App. at 781-82.

For these reasons, the district court correctly granted summary judgment on Mr.

Valencia's procedural due process claim.[8]

### C.  *Counts 15 and 17 - Title VII Discrimination Claims*

The district court granted summary judgment on Mr. Valencia's Title VII gender

and national origin discrimination claims.  It held that Mr. Valencia had failed to show

that UNM's legitimate, non-discriminatory reason for terminating him was pretextual.

We agree and affirm.

### 1.  **Legal Standards**

The *McDonnell Douglas* burden-shifting framework, which applies to Title VII

discrimination claims, allows a plaintiff to prove indirectly that an adverse employment

action was motivated by a discriminatory motive.  *Perry v. Woodward*, 199 F.3d 1126,

1135 (10th Cir. 1999).

> Under that analysis, a plaintiff carries the burden of raising a
> genuine issue of material fact on each element of his prima
> facie case.  If plaintiff establishes a prima facie case, the
> burden shifts to the defendant to offer a legitimate
> nondiscriminatory reason for its employment decision.  If
> defendant articulates a nondiscriminatory reason, the burden
> shifts back to plaintiff to show a genuine issue of material fact
> as to whether the defendant's reason for the adverse
> employment action is pretextual.

*Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1189 (10th Cir. 2003) (citation omitted).

---

[8] Further, Mr. Valencia has failed to explain how each of the 10 Individual
Appellees named in his procedural due process claim was responsible for causing a
constitutional deprivation.  Both in the district court and on appeal, Mr. Valencia has
failed to distinguish each of them and explain how each caused a constitutional injury.

2. **Analysis**

Both before the district court and on appeal, Mr. Valencia has identified no
evidence showing that UNM's legitimate, non-discriminatory reason for firing him—his
misconduct—was pretextual.  App. at 527-38; Aplt. Br. at 26-29.  Mr. Valencia's
arguments to the contrary lack merit.

First, he appears to contend that UNM did not state a sufficient legitimate, non-
discriminatory reason for terminating him.  Aplt. Br. at 26-27.  But he ignores that
UNM's "burden is exceedingly light, as its stated reasons need only be legitimate and
non-discriminatory on their face."  *DePaula v. Easter Seals el Mirador*, 859 F.3d 957,
970 (10th Cir. 2017) (citations and quotations omitted).  And UNM met its burden by
citing Mr. Valencia's misconduct as set forth in the OEO report.

Second, Mr. Valencia argues the district court "wrongly considered 'pretext'"
because UNM "nowhere addressed the issue of pretext" when moving for summary
judgment.  Aplt. Br. at 27.  We disagree.  When UNM moved for summary judgment, it
said Mr. Valencia could not show pretext.  App. at 409-13; *see id.* at 409 (bold-typeface
heading that states, "Plaintiff Cannot Show that the Termination Decision Resulted from
Anything other than Legitimate Non-Discriminatory Reasons").  Also, once UNM stated
a legitimate, non-discriminatory reason for terminating Mr. Valencia, the burden shifted
to *him* to show pretext.  *Davidson*, 337 F.3d at 1189.[9]

---

[9] In his reply brief, Mr. Valencia argues for the first time he can show pretext.
Aplt. Br. at 18.  But he forfeited this argument in district court and waived it here by
failing to argue plain error.  *Richison*, 634 F.3d at 1138.  And we ordinarily do not

For these reasons, we affirm the district court's grant of summary judgment against Mr. Valencia's Title VII discrimination claims.

### D.  *Count 19 - Title VII Retaliation Claim*

The district court granted summary judgment on Mr. Valencia's Title VII retaliation claim.  It held that Mr. Valencia had failed to show a causal connection between his protected activities and UNM's adverse employment actions.  We agree and affirm.

### 1.  **Legal Standards**

The *McDonnell Douglas* burden-shifting framework also applies to Title VII retaliation claims.  *Stover v. Martinez*, 382 F.3d 1064, 1070-71 (10th Cir. 2004).  To establish a prima facie case of retaliation under Title VII, a plaintiff must show (1) he engaged in a protected activity; "(2) [the employer] took action against him which a reasonable person would have found materially adverse; and (3) a causal connection existed between the protected activity and the materially adverse action."  *Singh v. Cordle*, 936 F.3d 1022, 1042 (10th Cir. 2019).

### 2.  **Analysis**

Mr. Valencia does not explain why the district court erred in holding that he did not identify evidence of a causal connection between his protected activities and any adverse employment actions.  Aplt. Br. at 28-29.

---

consider new arguments raised in a reply brief.  *United States v. Leffler*, 942 F.3d 1192, 1197 (10th Cir. 2019).

Mr. Valencia's arguments are otherwise irrelevant and insufficiently developed. First, he argues he "presented evidence to the district court that [Dean] Peceny considered Valencia 'the problem' and [Mr. Valencia's OEO] complaints remained unaddressed." *Id.* at 28 (citing App. at 548-57, 575-84). But Mr. Valencia does not explain how this shows a causal connection between his protected activities and any adverse employment actions.[10]

Second, Mr. Valencia argues he can show pretext because of procedural irregularities relating to his OEO complaints, the OEO's investigation against him, pretermination procedures, and post-termination procedures. *Id.* at 28-29; *see id.* at 17-18 (making a similar argument in the procedural due process context). But Mr. Valencia has failed to show the causation element of his prima facie case.[11]

For these reasons, we affirm the grant of summary judgment on Mr. Valencia's Title VII retaliation claim.

---

[10] Mr. Valencia cites a 20-page section of the Appendix that consists of correspondence between Mr. Valencia and UNM, and notes about a February 2016 meeting between Mr. Valencia, Dean Peceny, and Les Field. App. at 548-57, 575-84. We are unable to locate what evidence shows that Dean Peceny referred to Mr. Valencia as "the problem."

[11] Even if we reached pretext, Mr. Valencia has neither explained what UNM's procedures were nor how UNM deviated from them. He simply cites without explanation one of his district court briefs and a letter his attorney submitted to UNM decisionmakers. Aplt. Br. at 29 (citing App. at 531-33, 592-97, 601); *see id.* at 17-18 (in the context of his procedural due process argument, also citing various UNM policies without explanation). "By failing to develop any argument . . . at *this court*, [Mr. Valencia] has waived" the argument that a jury can infer pretext. *See United States v. Patterson*, 713 F.3d 1237, 1250 (10th Cir. 2013).

## III. **CONCLUSION**

We affirm the district court's judgment.

Entered for the Court


Scott M. Matheson, Jr.
Circuit Judge

### UNITED STATES COURT OF APPEALS
### FOR THE TENTH CIRCUIT
### OFFICE OF THE CLERK

Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157

Christopher M. Wolpert
Clerk of Court

April 19, 2021

Jane K. Castro
Chief Deputy Clerk

Mr. Michael Ernest Mozes
Michael E. Mozes Law Offices
P.O. Box 93784
Albuquerque, NM 87199

RE:     **20-2079, Valencia v. Board of Regents, et al**
         Dist/Ag docket: 1:17-CV-00509-RB-SCY

Dear Counsel:

Enclosed is a copy of the order and judgment issued today in this matter. The court has entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Pursuant to Fed. R. App. P. Rule 40(a)(1), any petition for rehearing must be filed within 14 days after entry of judgment. Please note, however, that if the appeal is a civil case in which the United States or its officer or agency is a party, any petition for rehearing must be filed within 45 days after entry of judgment. Parties should consult both the Federal Rules and local rules of this court with regard to applicable standards and requirements. In particular, petitions for rehearing may not exceed 3900 words or 15 pages in length, and no answer is permitted unless the court enters an order requiring a response. *See* Fed. R. App. P. Rules 35 and 40, and 10th Cir. R.35 and 40 for further information governing petitions for rehearing.

Please contact this office if you have questions.

Sincerely,

Christopher M. Wolpert
Clerk of the Court

cc:      Virginia Anderman
         Max A. Jones
         Paula Maynes
         Luke Salganek


CMW/sds